UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SASSON PLASTIC SURGERY, LLC,

                                                              **MEMORANDUM & ORDER**

                                   Plaintiff,                 17-cv-1674 (SJF) (ARL)

              -against-

UNITEDHEALTHCARE OF NEW YORK, INC.,

                                   Defendant.
----------------------------------------------------------X
FEUERSTEIN, District Judge:

    Plaintiff Sasson Plastic Surgery, LLC ("Plaintiff" or "Sasson") commenced this action

against UnitedHealthcare of New York, Inc. ("Defendant" or "United") asserting violations of

the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 *et seq.* and state

law. Currently before the Court is Defendant's motion to dismiss the amended complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. *See*

Docket Entry ("DE") [31].  Plaintiff has opposed the motion.  For the reasons set forth herein,

the motion is granted in part and denied in part.

## I. BACKGROUND

### A. Factual Allegations

    The following facts are taken from the amended complaint ("AC"), DE [15], and are

assumed to be true for purposes of this motion.  In addition to the allegations in the amended

complaint itself, that document is also "deemed to include any written instrument attached to it

as an exhibit, materials incorporated in it by reference, and documents that, although not

incorporated by reference, are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d

Cir. 2004) (citations omitted) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

Plaintiff is a New York corporation consisting of a single member, Dr. Homayoun N. Sasson ("Dr. Sasson"), a hand plastic and reconstructive surgeon licensed to practice medicine in New York.  AC ¶1.  United is an insurance corporation authorized to do business in New York.  *Id.* ¶2.  Plaintiff seeks to recover monies from United for medical services it provided to approximately four hundred forty (440) patients covered by healthcare plans issued or administered by United.

Plaintiff does not have an in-network contract with United and therefore is considered an out-of-network or non-participating provider.  AC ¶3.  As such, Plaintiff "may collect its full charges directly from the patients at the time of service and is not required to accept reduced rates for medical procedures it performs."  *Id.*  Alternatively, and as it did in this case, Plaintiff may accept assignment of the patient's benefits in consideration of the health care services provided, and submit its claims for services rendered on behalf of that patient directly to the health plan "to receive from that health plan whatever member benefits that patient is entitled to receive under the patient's health plan."  *Id.*

Plaintiff typically responds to hospital calls to attend to patients requiring emergency treatment, and provides this care without regard to the patient's financial circumstances and regardless of whether there is healthcare insurance.  AC ¶4.  It does not usually learn whether the patient has healthcare insurance or the identity of the insurance plan until after the patient has been treated and is in stable condition.  *Id.* Either through the patient's admission to the hospital or in follow-up office visits, Plaintiff obtains an assignment of benefits from the patient that permits Plaintiff to send claim forms to the insurance company and authorizes the insurer to

remit the patient's benefits directly to Plaintiff. *Id.* ¶5. Plaintiff alleges that for each claim in this case, it received an assignment of the patient's member benefits under that patient's health plan, "which assignment authorized Plaintiff to send to Defendant claim forms for its charges for the medical care provided to the patient-member and authorized the Defendant to remit those patient-member's related health benefits directly to Plaintiff." *Id.* The amended complaint does not include any direct quotations from the purported assignments, nor does it attach any such documents.

During the time period from August 1, 2012 through April 2, 2016, Plaintiff provided emergency health care services to patients who were covered under healthcare plans issued or administered by Defendant. AC ¶6. The amended complaint, while silent as to the number of patient or claims at issue, references a list of patient names with claims information that was purportedly provided to Defendant but was not attached for filing "due to HIPAA restrictions." AC ¶8. The Court requested and received a copy of Plaintiff's list, which is in spreadsheet form without numbered lines. By the Court's count, the list sets forth five hundred forty-eight (548) claims made by a total of four hundred forty (440) patient/members.[1] Plaintiff claims that the reasonable charges for the services rendered to these patients totaled "not less than $3,886,846.05." *Id.* ¶7. While it has received some payments from Defendant, Plaintiff claims it is still owed in excess of $2.1 million.[2]

---

[1] The patient receiving treatment may have been the member of the plan or a beneficiary of a member. Throughout this opinion and depending on context, the court uses the terms "patient," "member," or "patient/member" as appropriate.

[2] The exact dollar amounts prove difficult to determine from the face of the amended complaint, which indicates that Plaintiff has received some payments directly from Defendant, but states varying amounts of such payments. *Compare* AC ¶7 ("Plaintiff has only been paid $2,172,926.65.") *with* AC ¶¶23, 54, 68, 76, 86 (Defendant only has paid Plaintiff the amount of $1,732,926.65). Assuming that the amount already paid appearing in paragraph 7 was a typographical error, and using the amount allegedly paid as stated in multiple subsequent paragraphs instead, and then subtracting the lower payments-made amount

On May 4, 2016, a tolling agreement was entered into which, according to the amended complaint, "tolled the statute of limitation and any policy limitation 'with regard to [Plaintiff]'s claims against [Defendant] arising out of the nonpayment or underpayment for services provided by [Plaintiff] to beneficiaries of [Defendant]'s health plans.'" AC ¶9 (alterations in original).

Defendant issued Explanation of Benefits forms to patients, or "otherwise communicated with patients and/or other third parties about Plaintiff's claims." AC ¶110. In these communications, Defendant "alleged that Dr. Sasson misrepresented the services that he provided, altered documents, replaced the attending emergency room physicians' names with his name on hospital admissions sheets, or committed other fraud." *Id.* The amended complaint includes some specifics on of these communications involving fifty-two (52) "John Doe" patients. *See id.* ¶¶ 111-160. Plaintiff claims to have committed "no fraud or other misrepresentation with respect to its services of its patients or to the related billing" and that any investigation for fraud or irregular billing "lacked any basis in fact and is a sham to support Defendant's improper efforts to avoid paying Plaintiff." *Id.* ¶164. Plaintiff alleges that Defendant's communications constitute, *inter alia,* defamation per se and trade defamation. *Id.* ¶¶168-172.

## B. Procedural History

Plaintiff commenced this action by the filing of a summons and complaint in New York Supreme Court, Nassau County, on February 24, 2017. The case was timely removed to this Court, and Defendant served its initial motion to dismiss on or about June 2, 2017. *See* DE [12]. Plaintiff acknowledged receipt of the motion, expressed its intent to amend the complaint, and

---

from the total services rendered figure, an apparent balance due and owing to Plaintiff in the amount of $2,153,919.40 is calculated. However, the ad damnum clause asserts damages in the amount of either $2,154,216.40 or $2,172,926.65.

sought an extension of time in which to do so. *See* DE [14]. The amended complaint was filed on July 7, 2017 and asserts eleven (11) causes of action ("C/A"). There are two federal law causes of action: failure to abide by terms of a Plan in violation of ERISA, §502(a)(1)(B) (First C/A); and breach of fiduciary duty in violation of ERISA, §502(a)(3) (Second C/A). The remaining causes of action arise under state law: breach of Plaintiff's contract with Defendant (Third C/A); breach of patient contracts with Defendant (Fourth C/A); third party beneficiary breach of contract (Fifth C/A); unjust enrichment (Sixth C/A); quantum meruit (Seventh C/A); account stated (Eighth C/A); conversion (Ninth C/A); defamation (Tenth C/A); and tortious interference with contract (Eleventh C/A).

United has moved to dismiss the amended complaint. Plaintiff opposes the motion in part, expressly stating in its opposition that it does not contest the motion to dismiss its Fifth, Eighth, and Ninth Causes of Action. *See* Plaintiff's Memorandum of Law in Opposition ("Pl. Opp."), at 18 n.10, DE [41].

## II. LEGAL STANDARDS

Defendant seeks dismissal of the action pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The standards for analyzing a motion to dismiss are well-established. The court must accept the factual allegations in the complaints as true and draw all reasonable inferences in favor of the plaintiff. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (citations omitted). The court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S at 678 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The determination of "whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S at 679.   A pleading that does nothing more than recite bare legal conclusions, however, is insufficient to "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678-679; *see also Twombly,* 550 U.S. at 555 (holding that a "formulaic recitation "formulaic recitation of cause of action's elements will not do.   Factual allegations must be enough to raise a right to relief above the speculative level."). While Rule 8 does not require "detailed factual allegations," it does require more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court may consider any documents attached to the complaint and statements or documents incorporated into the complaint by reference.  The tolling agreement expressly referenced in the amended complaint has been provided by Defendant and is properly before the Court on this motion.

The amended complaint itself is devoid of any factual allegations regarding any individual patient or amounts allegedly owed due to care provided to a patient, purportedly due to "HIPAA restrictions."  AC ¶8.  It further states that "[a] list of patient names, and the corresponding dates of service, amount of charges, amount of payments and the remaining balance due has been or can be sent to Defendant." *Id.*  In response to an order from the Court, an unredacted copy of this list was filed under seal and is considered incorporated by reference. DE [48-1].

Consideration of additional materials outside the complaint is permitted when documents are "integral" to the complaint such that "the complaint relies heavily upon its terms and effect." *Goel v. Bunge, Ltd.,* 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers,* 282 F.3d at 153). Even where a document is integral to the complaint, it may only be considered if it is "clear on the record that no dispute exists regarding authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir. 2006) (citation omitted).   Courts may also consider "matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing the suit."  *Chambers,* 282 F.3d at 153 (ellipsis, internal quotation marks, and citation omitted).

The Plan documents for each patient/member have been provided by Defendant.  These materials, which constitute the contractual bases for Defendant's obligations to the members, are integral to the complaint and may be considered.  *See Mbody Minimally Invasive Surgery, P.C. v. Empire Healthcare HMO, Inc.* ("*Mbody II*")*,* No. 13cv6551, 2016 WL 2939164, at *3 (S.D.N.Y. May 19, 2016) (Plan documents "are precisely the kind of 'contracts' upon which the plaintiffs' amended complaint stands or falls"); *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.,* 770 F. Supp. 2d 497, 545 n.22 (E.D.N.Y. 2011) (noting that a court "may consider the plan documentation submitted by defendants [on a motion to dismiss] because the plaintiffs' claims are based upon the ERISA plans and the plan documents plainly are integral to plaintiffs' complaint").  In support of its motion Defendant has submitted two redacted spreadsheets setting forth the patient's name, date of service, group name, and a column quoting specific plan provisions, in one case, regarding assignment of benefits, Defendant's  Amended Appendix A  in Support ("Def. App'x A"), DE [37], and in the other, limitation of actions, Amended Appendix

B in Support("Def. App'x B"), DE [38].  The quoted provisions contained in the spreadsheets are excerpted from the Plan documents.  With limited exceptions, discussed below where necessary, Plaintiff does not dispute that the provisions as set forth in the appendices are accurate.  Given the large number of patients and claims presented, the Court has found the spreadsheets useful in navigating the Plan documents, has used them in that capacity, and occasionally cites to the Plan language as it appears in the appendices rather than the Plan documents.  Where appropriate, citations are made to the appendices by line number and patient initials as set forth therein.

## III.  DISCUSSION

Plaintiff seeks payment of approximately five hundred forty-eight (548) claims made by four hundred forty (440) patients and involving numerous separate Plans for these patients.  The Plans are split somewhat evenly between ones subject to ERISA and non-ERISA Plans.

## A.  ERISA Plans

### 1.  Payment of Benefits

Only health plan participants and beneficiaries are authorized by statute to bring civil enforcement actions under §502(a)(1)(B) to recover plan benefits. *See* 29 U.S.C. § 1132 (a)(1)(B); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 27, 103 S. Ct. 2841, 771 L. Ed. 2d 420 (1983); *see also Rojas v. Cigna Health & Life Ins. Co.,* 793 F.3d 253, 256 (2d Cir. 2015) ("Section 502 is narrowly construed to authorize only two categories of persons to sue directly to enforce their rights under the plan:  participants and beneficiaries"). ERISA defines a "participant" as "any employee or former employee of an employer. . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees off such employer. . . or whose beneficiaries may be eligible to receive any such benefit," 29 U.S.C. §1002(7), and "beneficiary" as "a person designated by a participant, or

by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* § 1002(8).

While healthcare providers are neither participants nor beneficiaries under ERISA, the Second Circuit has "carv[ed] out a narrow exception to the ERISA standing requirements" for "healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *Simon v. Gen. Elec. Co.,* 263 F.3d 176, 178 (2d Cir. 2001). [3]  To proceed on this basis, the assignee "must establish the existence of a valid assignment that comports with the terms of the benefits plan." *Mbody II,* 2016 WL 2939164, at *4; *see also Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.,* 919 F. Supp. 2d 345, 351 (S.D.N.Y. 2013) ("a provider who asserts a claim as an assignee of a participant or beneficiary to an ERISA plan has standing to sue as long as the litigant has a colorable claim to that status").  Where the ERISA plan has an anti-assignment provision, however, the provider's "acceptance of an assignment [i]s ineffective—a legal nullity." *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.,* 857 F.3d 141, 147 (2d Cir. 2017); *see also Neuroaxis,* 919 F. Supp. 2d at 352 ("a healthcare provider who has attempted to obtain an assignment in contravention of a plan's terms is not entitled to recover under ERISA").  "The validity of assignments for ERISA purposes is a question of federal common law." *Merrick v. UnitedHealth Grp., Inc.,* 175 F. Supp. 3d 110, 117 (S.D.N.Y. 2016) (internal quotation marks and citation omitted); *see also Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co.,* No. 14 Civ. 2495, 2016 WL 4382709, at *6 (S.D.N.Y.  Aug.

---

[3] While cases formerly referred to a party's "statutory standing" to bring suit, the Supreme Court has instructed that the issue "is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'"  *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.,* 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l Inc. v. Static Control Components, Inc.,* 572  U.S. 118, 128, 134 S. Ct. 1377, 1387, 188 L. Ed. 2d 392 (2014)).  This Court avoids referring to "statutory standing" other than referencing or quoting prior opinions that use the term.

16, 2016) ("[u]nder federal common law. . . unambiguous anti-assignment clauses serve to void patients' assignments of benefits and other legal obligations under ERISA").  ERISA plans are interpreted, and any possible ambiguity assessed, "in an ordinary and popular sense as would a person of average intelligence and experience." *Critchlow v. First UNUM Life Ins. Co.,* 378 F.3d 246, 256 (2d Cir. 2004).   Applying rules of contract law, "a court must not rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous." *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan,* 572 F.3d 76, 81 (2d Cir. 2009) (internal quotation marks and citation omitted).

United seeks dismissal of the claims relating to the treatment of one hundred eighty (180) patients because the ERISA Plans at issue contain anti-assignment provisions, thus rendering any assignment from patient to Plaintiff void and preventing it from asserting a claim for benefits.[4]  In opposition, Plaintiff argues that: (a) the amended complaint properly alleges that the assignments were valid and that discovery is necessary on the issue of whether United consented to the assignments; (b) the Plan provisions for nine (9) patients explicitly permit assignment of payments to providers; and (c) United waived the anti-assignment provisions by making partial payments on claims.

a. *Anti-assignment provisions*

Plaintiff raises no specific argument about the applicability of the anti-assignment provisions for one hundred (100) of the patients.  These purported assignments are ineffective. Of these, sixty (60) broadly prohibit the assignment of benefits or monies due, concluding

---

[4] Plaintiff notes, and Defendant does not dispute, that there are additional claims from approximately fifty-six (56) patients covered by ERISA Plans that do not contain anti-assignment provisions.  As at least some of the ERISA claims appear to be validly assigned, federal question jurisdiction of this Court exists.

without exception that "[a]ny assignment by You will be void."[5]  The plain language used is clear, definite, and unambiguous.  Provisions pertaining to forty (40) other patients prohibit the assignment of any benefits, but permit an assignment for monies due for a "surprise bill" only.[6] These provisions conclude that "[a]ny assignment by You other than monies due for a surprise bill will be void."  Plaintiff has not alleged that any of its claims constituted a "surprise bill," and therefore the exception to the prohibition is not applicable.  The remainder of the anti-assignment provision contains the clear, unambiguous prohibition on any other assignment.  Thus, the purported assignments for claims referenced in this paragraph are void and Plaintiff may not proceed as to them.

The anti-assignment clauses in sixty-four (64) cases allow for assignment only with United's consent.  Twenty-two (22) of those provisions require that the consent be obtained in writing,[7] and the remaining forty-two (42) require consent without express direction as to how it should be obtained.[8]   The clear and unambiguous language of these anti-assignment provisions

---

[5] This provision pertains to the following patients, referring to the line number and patient initials as set forth in Defendant's Amended Appendix A.  *See*  Def. App'x A, #6:A.B; #9:J.C.; #14:B.C.; #24:L.D.; #27:R.E.; #29:L.E.; #30:L.E.; #34:L.G.; #38:N.G.; #40:P.G.; #45:B.H.; #46:L.H.; #52:M.H.; #56:L.H.; #60:R.I.; #64:D.J.; #70:K.K.; #73:I.K.; #78:R.L.; #81:J.L.; #84:S.M.; #86:K.M.; #89:E.M.; #91:R.M.; #93:S.M.; #101:B.N.; #102:R.N.; #103:D.N.; #111:O.P.; #115:M.P.; #116:B.P.; #119:M.P.; #121:G.Q.; #123:C.R.; #124:M.R.; #128:C.R.; #129:R.R.; #131:C.R.; #132:A.R.; #136:J.S.; #137:L.S.; #138:S.S.; #139:M.S.; #140:C.S.; #142:Z.S.; #144:D.S.; #146:E.S.; #152:A.S.; #153:H.S.; #154:J.S.; #157:Y.S.; #158:A.T.; #162:C.T.; #168:J.V.; #172:E.W.; #173:L.W.;  #175:D.W.; #177:S.Y.; #179:Z.C.; #180:H.Z.

[6] *See* Def. App'x A, #4:V.A.; #5:D.B.; #8:D.B.; #10:S.C.; #15:C.C.; #25:J.D.; #33:K.G.; #35:M.G.; #39:B.G.; #41:N.G.; #44:N.G.; #47:D.H.; #48:K.H.; #51:B.H.; #55:B.H.; #57:R.H.; #61:M.I.; #62:M.I.; #63:L.J.; #67:E.K.; #69:S.K.; #79:D.L.; #80:J.L.; #87:A.M.;  #96:J.M.; #97:G.M.;  #105:D.N.; #127:M.R.; #130:L.R.; #133:V.R.; #135:B.S.; #145:D.S.; #147:E.S.; #150:E.S.; #160:A.T.; #163:N.T.; #165:T.T.; #169:O.W.; #170:J.W.; #176:D.Y.

[7] *See* Def. App'x A, #13:E.C.; #18:R.D.; #22:D.D.; #23:K.D.; #36:J.G.; #42:M.G.; #49:C.H.; #50:S.H.; #53:N.H.; #54:T.H.; #58:S.H.; #59:C.H.; #68:Y.K.; #71:L.K.; #76:G.L.; #99:A.M.; #114:C.P.; #120:C.P.; #134:M.S.; #143:S.S.; #151:S.S.; #164:A.T.

[8] *See* Def. App'x A, #1:R.A.; #2:C.A.; #7:J.B.; #11:A.C.; #12:G.C.; #16:M.C.; #20:C.D.; #21:J.D., #28:D.E.; #31:G.F.; #65:K.J.; #66:K.K.; #74:D.L.; #75:P.L.; #82:C.L.; #83:H.L.; #88:I.M.; #90:J.M.;

requires consent of the Plan or Claims Administrator for an assignment to be valid.  While the amended complaint does not specifically allege that consent was obtained for any patient, Plaintiff argues that three paragraphs in that pleading allege "valid assignments...which allegation subsumes the receipt of any consent required by plan language."  Pl. Opp. at 13 (citing AC ¶¶ 5, 13, 29).  The Court disagrees.  The amended complaint does not reference "consent" and never claims that "valid" assignments were obtained, but rather summarily states that it received assignments from the patients that authorize it to, *inter alia,* pursue the patients' ERISA claims.  These conclusory statements, devoid of any factual support as to consent obtained for the assignment from any, let alone every, patient, do not plausibly allege that valid assignments were obtained.

As to the applicability of the anti-assignment provisions that require consent but not in writing, Plaintiff notes that many of these also provide that where a consent is not obtained, United "reserves the right, in its discretion, to pay a Non-Network provider directly for services rendered to you."  Pl. Opp. at 13.  Courts in this District examining similar provisions have found that no ambiguity is created by these two clauses and that "an anti-assignment clause remains effective notwithstanding the existence of a direct payment provision in the plan."  *Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.,* No. 16-CV-5265, 2019 WL 1409806, at *9 (S.D.N.Y. Mar. 28, 2019); *see Neuroaxis,* 919 F. Supp. 2d at 355 (noting that the "fact that [the insurer] reserved for itself the right to make direct payments to healthcare providers does not suggest that the Plan member also have the right to unilaterally assign rights to healthcare providers"); *Merrick,* 175 F. Supp. 3d at 122 (finding clause unambiguous, noting that "[t]o find that [the

---

#92:M.M.; #94:M.M.; #95:C.M.; #98:J.M.; #100:E.N.; #104:W.N.; #106:C.O.; #107:P.O.; #108:D.O.; #110:M.P.; #117:B.P.; #118:B.P.; #122:J.R.; #126:R.R.; #141:M.S.; #148:I.S.; #149:A.S.; #155:W.S.; #156:M.S.; #159:J.T.; #161:H.T.; #166:A.U.; #167:B.V.; #171:M.W.

insurer] implicitly waived the anti-assignment provision by acting pursuant to the direct payment

provision is to create an ambiguity where none exists"); *see also McCulloch,* 857 F.3d at 148

(finding the assignment barred without discussion of fact that partial payment had been made to

provider).  The purported assignments made in Plans with anti-assignment provisions requiring

consent are ineffectual.[9]

Upon completion of the analysis of the anti-assignment provisions implicated in the

above claims, sixteen (16) patients with claims under ERISA Plans with anti-assignment clauses

remain.  Plaintiff raises specific arguments regarding the provisions in many, but not all, of

these.[10]   Of the provisions addressed by Plaintiff, three (3) unambiguously allow assignments

and thus Plaintiff may proceed as to those claims.[11]

The remaining seven (7) provisions specifically addressed by Plaintiff permit an

assignment to providers of a right to payment while expressly prohibiting assignment of Plan

"benefits."  While ERISA does not define "benefit," the Second Circuit has noted that "[b]enefits

---

[9] Plaintiff's suggestion that there is an issue of fact requiring discovery as to whether there was consent effectively puts the cart before the horse given that Plaintiff has not alleged in its amended complaint that consent was received for treatment of even one of the patients, nor does it allege that it ever attempted to obtain United's consent.  Moreover, it has made no attempt to argue on this motion that such evidence exists.  Absent factual allegations nudging a claim toward plausibility, the doors to discovery remain closed.

[10] Plaintiff asserts its argument as to nine (9) patients, on lines numbered 3, 17, 26, 32, 37, 72, 85, 112 and 177 in Defendant's original appendix; however, as designated in Defendant's amended appendix A, the numbers are actually 3, 17, 26, 32, 37, 72, 85, *113* and *178*  For the sake of consistency, the Court refers to the updated numbers set forth in the amended appendix.   In addition, as the claim for patient on line number 174 arises under the same Plan as two others challenged by Plaintiff, it too will be considered here.

[11] Two (2) of these, for claims #26:R.D. and #85:S.M., authorize direct payments to providers and do not expressly prohibit assignment.  Regarding the claim for #3:S.A., the "assignment of benefits" provision refers to "benefits assigned to your doctor" including that claims may be paid to "your assigned doctor."  While a separate provision states that benefits cannot be assigned, it excepts assignments described under the prior assignment of benefits section.

to which a beneficiary is entitled are bargained-for goods, such as medical, surgical, or hospital care. . . rather than a right to payment for medical services rendered." *Rojas,* 793 F.3d at 257 (internal quotation marks and citation omitted); *see also id.* at 258 (lamenting the confusion created by using "the term 'benefit' loosely to include payment owed"). In *Rojas,* which did not involve application of an anti-assignment provision, the Second Circuit noted that patient assignments are limited to the specific rights conferred by that assignment, making a distinction between "right to payment" and "any other claims they may have under ERISA." *Id.* Relevant to the current case is the issue of whether the assignment of a right to payment, without more, includes a right to sue to enforce that right where there is an anti-assignment provision that prohibits other assignments. Neither party has adequately addressed this question. Since the provisions in question all unambiguously permit assignment of medical claim payments,[12] Plaintiff will be permitted to rely on those assignments at this juncture in the litigation.

As to the claims for the last six (6) patients, the Court has reviewed the anti-assignment provisions implicated in each and finds them to unambiguously prohibit assignment.[13] To summarize, the Court determines that assignments of the claims filed on behalf of ten (10) patients #3:S.A., #17:S.C., #26:R.D., #32:D.F., #37:L.G., #72:K.K., #85; S.M., #113:R.P.; #174:E.W.; and #178:G.Z are not void by operation of the anti-assignment provisions in the relevant Plans and thus Plaintiff is not barred at the motion to dismiss stage from proceeding on those claims. The attempted assignments for the remaining one hundred seventy (170) patients addressed by Defendant in this motion were ineffectual and void, and Plaintiff may not pursue relief under ERISA as to them.

---

[12]Def. App'x A, #17:S.C; #32:D.F.; #37:L.G.; #72:K.K.; #113:R.P.; #174:E.W.; and #178:G.Z.

[13] Def. App'x A, #19:D.D.; #43:J.G.; #77:C.L; #109:A.O; #112:K.P; and #125:G.R.

### b. Waiver

Plaintiff argues that Defendant waived its right to enforce any anti-assignment clauses by its actions, including by making direct payments to Plaintiff.  Generally, the equitable doctrine of waiver is applicable to ERISA actions.[14]  *See, e.g., Med. Soc'y,* 2019 WL 1409806, at *10; *Merrick,* 175 F. Supp. 3d at 120.  "Waiver arises when a party has voluntarily or intentionally relinquished a known right," *Merrick,* 175 F. Supp. 3d at 122, and requires "a clear manifestation of an intent by [a party] to relinquish [its] known right." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.,* 448 F.3d 573, 585 (2d Cir. 2006) (internal quotation marks and citation omitted).   "Mere silence regarding the anti-assignment provisions does not constitute a waiver of those provisions." *Neurological Surgery, P.C. v. Travelers Co.* (*"Travelers"*), 243 F. Supp. 3d 318 (E.D.N.Y. 2017); *see also Neurological Surgery, P.C. v. Aetna Health Inc.* (*"Aetna Health"*), No. 2:19-cv-4817, 2021 WL 26097, at *11 (E.D.N.Y. Jan. 4, 2021)  (although the insurer "never once pointed to the anti-assignment language to deny or underpay any claim, [its] inaction does not constitute waiver" (internal quotation marks and alterations omitted)); *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthcare HMO, Inc.* ("*Mbody I*"), No. 13cv6551, 2014 WL 4058321, at *3 (S.D.N.Y. Aug. 15, 2014) (defendants' failure to raise the anti-assignment provision at the time of denial or reduction in payment is "irrelevant" and is "simply another way of re-arguing that defendants waived the anti-assignment provision by making direct payments to plaintiffs—an argument courts have repeatedly rejected").

Courts in this Circuit have repeatedly found that the making of partial or direct payments to providers does not, by itself, establish a waiver of anti-assignment provisions.  *See, e.g.,*

---

[14]Although the doctrine of equitable estoppel has also been found to be apply in ERISA cases,  *see e.g., Merrick,* 175 F. Supp. 3d at 121, Plaintiff does not raise estoppel here.

*Shuriz Hishmeh, M.D. v. Empire Health Choice Assurance, Inc.,* No. 19-CV-03144, 2020 WL 4452112, at *4 (E.D.N.Y. Aug. 3, 2020) ("Courts routinely find that when a health insurance company makes a direct payment to healthcare providers, it does not constitute a waiver of any applicable anti-assignment provision."); *Travelers,* 243 F. Supp. 3d at 330 (direct payment does not "constitute a waiver of the provisions unequivocally preventing a Plan member/beneficiary from assigning to any third party his right to sue"); *see also Surgicore of Jersey City v. Anthem Life &Disability Ins. Co.,* No. 19-cv-3482, 2020 WL 32447, at *3 (E.D.N.Y. Jan. 2, 2020) (partial payment to a provider does not constitute a waiver).  Indeed "even a long-standing pattern and practice of directly paying an out-of-network provider for services provided under an ERISA plan, without more, is insufficient" to demonstrate waiver of the anti-assignment provisions.  *Angstadt v. Empire HealthChoice HMO, Inc.,* No. 15-CV-1823, 2017 WL 10844692, at *6 (E.D.N.Y. Mar. 16, 2017) (internal quotation marks and citation omitted); *see also Aetna Health,* 2021 WL 26097, at *12 ("That Plaintiff routinely submitted its claims to Aetna, and that Aetna paid those claims directly to [Plaintiff], over the course of several years, does not override the anti-assignment provisions" (internal quotation marks and citation omitted)).  As Plaintiff has not provided any basis to depart from this caselaw and the analysis therein, the Court determines that any partial and/or direct payments made to Defendant do not constitute a waiver of the applicable anti-assignment provisions.

Plaintiff argues that the waiver issue may not be resolved at the motion to dismiss stage because it requires "discovery of *United's intent.*" Pl. Opp. at 14-15 (emphasis in original).  In making this argument, it again attempts to circumvent its pleading obligations.  The amended complaint alleges only that Plaintiff accepted assignments from the patients authorizing it to submit claim forms to Defendant, AC ¶¶3, 5, and that Defendant made partial payments directly

16

to Plaintiff.  *Id.* ¶7.  There is not a single factual allegation that allows any inference, much less a reasonable inference, that Defendant waived the anti-assignment provisions.  *See generally Travelers,* 243 F. Supp. 3d at 330 (finding no waiver where complaint "says nothing about the methods or contents of the communications" between the provider and insurer and "provides no indication that [the insurer] voluntarily or intentionally waived the anti-assignment provisions").  Thus, the amended complaint is completely devoid of any factual content necessary to open the doors to discovery.[15]

2.  Breach of Fiduciary Duty

Plaintiff's second ERISA cause of action asserts a breach of fiduciary duty claim arising from § 502(a)(3), which allows plan participants, beneficiaries, or fiduciaries to bring a civil action to "enjoin any act or practice which violates any provision of this subchapter or terms of the plan, or . . . obtain other appropriate equitable relief."  29 U.S.C. §1132(a)(3).  It is an equitable provision, and suits may be brought under it "only for 'those categories of relief that were *typically* available in equity,'" not for compensatory damages.  *Wilkins v. Mason Tenders Dist. Council Pension Fund,* 445 F.3d 572, 582 (2d Cir. 2006) (quoting *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 256, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993)) (emphasis in original).  Suits seeking "to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty."  *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002) (internal quotation marks and citation omitted).

---

[15]Plaintiff seeks leave to amend to plead waiver "including facts supporting an inference of such waiver." Pl. Opp. at 16 n.7.  This request will be addressed below, *see* Section III (F).

Defendant seeks dismissal of this cause of action, noting, *inter alia,* that the claim is "duplicative" in that it fails to seek equitable relief but rather seeks monetary damages for unpaid benefits.  Plaintiff's wholly inadequate opposition provides no legal analysis or case support, but rather is limited to two sentences in a footnote:  "United also asserts the Second Count should be dismissed as duplicative of the First Count.  To [the] extent necessary, Sasson should be given the opportunity to replead."  Pl. Opp. at 18 n.9.

Putting aside the issue of whether Plaintiff may claim to be a participant, beneficiary, or fiduciary entitled to bring this claim, it is clear that Plaintiff does not state a claim sounding in equity. The amended complaint states that as a result of Defendant's conduct allegedly violative of §502(a)(3), "Plaintiff is entitled to the unpaid benefits and interest from the date their patients' claims were originally submitted to Defendant..."  AC ¶34.  The gravamen of Plaintiff's action is plainly a claim for monetary damages, identical to the relief it seeks under §502(a)(1).  *See generally LI Neuroscience Specialists v. Blue Cross Blue Shield of Florida,* 361 F. Supp. 3d 348, 357-58 (E.D.N.Y. 2019) (dismissing §502(a)(3) claim as an attempt to "repackage" §502(a)(1) claim where "plaintiff is not seeking equitable relief at all, but rather seeks the balance of the billed and unreimbursed medical expenses—the exact same relief sought in plaintiff[']s § 502(a)(1)(B) claim").  As Plaintiff has not requested any equitable relief, dismissal of this cause of action is warranted.  *See Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 89-90 (2d Cir. 2001) (the remedy for breach of fiduciary duty under §502(a)(3) "is limited to such equitable relief as is considered appropriate").

3.  Preemption of State Law Claims

Defendants argue that the state law claims for defamation and tortious interference with contract are preempted by ERISA.[16]  "Among other things, ERISA creates a comprehensive civil enforcement scheme that completely preempts any state-law cause of action that 'duplicates, supplements, or supplants' an ERISA remedy." *Montefiore Med. Ctr. v. Teamsters Local 272,* 642 F.3d 321, 327 (2d Cir. 2011) (quoting *Aetna Health Inc. v. Davila,* 542 U.S. 200, 209, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004)).[17]  Express or conflict preemption may exist where a federal law "contains an express preemption clause," that requires the court to "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Chamber of Com. of U.S. v. Whiting,* 563 U.S. 582, 594, 131 S. Ct. 1968, 179 L. Ed. 2d 1031 (2011) (internal quotation marks and citation omitted).  The Supreme Court has observed that ERISA's preemption provisions "are deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45-46, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987) (internal quotation marks and citation omitted).

ERISA expressly "supersede[s] any and all State laws insofar as they . . . relate to any employee benefit plan."  §514(a), 29 U.S.C. §1144(a).  The express preemption clause is "not

---

[16] In its opposition papers, Plaintiff also argues that its state law causes of action for unjust enrichment, quantum meruit, and breach of contract between Sasson and United should not be preempted.  As the amended complaint limits these causes of action to patients who were insured by health plans "not within the scope of ERISA," no question of preemption is raised.

[17] ERISA provides for complete preemption and express preemption.  Complete preemption, which relates to the federal court's jurisdiction, is not at issue here.  Complete preemption provides that "a plaintiff's 'state cause of action [may be recast] as a federal claim for relief, making [its] removal [by the defendant] proper on the basis of federal question jurisdiction.' "  *Wurtz v. Rawlings Co.,* 761 F.3d 232, 238 (2d Cir. 2014) (quoting *Vaden v. Discover Bank,* 556 U.S. 49, 61, 129 S. Ct. 1262, 173 L. Ed. 2d 206 (2009)) (alterations in original).  The amended complaint contains causes of action under ERISA and thus federal question jurisdiction already exists.

limited to state laws specifically designed to affect employee benefit plans," *Pilot Life,* 481 U.S. at 48 (internal quotation marks and citation omitted), but also pertains to common law causes of action that relate to an employee benefit plan. *See Watson v. Consol. Edison of N.Y.,* 594 F. Supp. 2d 399, 408 (S.D.N.Y. 2009); *see also Chau v. Hartford Life Ins. Co.,* 167 F. Supp. 3d 564, 571 (S.D.N.Y. 2016) ("ERISA preemption is not limited to state laws that specifically affect employee benefit plans; it extends to state common-law contract and tort actions that relate to benefits as well" (citations omitted)). A state law is preempted under §514 "if it tend[s] to control or supersede central ERISA functions . . .; precludes the nationally uniform administration of employee benefit plans . . . ; or seeks an alternative theory of recovery." *United Teamster Fund v. MagnaCare Admin. Servs., LLC,* 39 F. Supp. 3d 461, 472 (S.D.N.Y. 2014) (internal quotation marks and citations omitted).

To determine whether a state common law claim is preempted, the Second Circuit applies the test first set forth in *Davila. See Paneccasio v. Unisource Worldwide, Inc.,* 532 F.3d 101, 114 (2d Cir. 2008); *see also Trundle & Co. Pension Plan v. Emanuel,* No. 18 Civ. 07290, 2020 WL 4218273, at *4 (S.D.N.Y. July 23, 2020) (noting that the Second Circuit "distinguishes between express preemption of state statutory and state common law claims," and follows the *Davila* approach in regard to common law claims). Under the two-prong *Davila* test, ERISA preempts a cause of action where: (1) "an individual, at some point in time, could have brought his claim under ERISA;" and (2) "no other independent legal duty . . . is implicated by a defendant's actions." *Davila,* 542 U.S. at 210. Both prongs must be satisfied for a state law claim to be preempted by ERISA. *See McCulloch,* 857 F.3d at 146. To avoid potential confusion regarding application of the first prong, the Second Circuit has directed resolution of two further inquiries: (a) "whether the plaintiff is the *type* of party that can bring a claim

20

pursuant to §502(a)(1)(B);" and (b) whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits." *Montefiore,* 642 F.3d at 328 (emphasis in original); *see also Bassel v. Aetna Health Ins. Co.,* No. 2018 WL 4288635, at *2 (E.D.N.Y. Sept. 7, 2018) ("Only after analyzing these first two steps of the first *Davila* prong may a court proceed to determine whether there is an 'independent legal duty' that might bring a plaintiff's claims outside the scope of ERISA").

   a. *Davila* Prong One, Step One

  Here, the question of whether Sasson is the type of party that may bring a claim for ERISA benefits turns upon whether the patient assignments to it were valid since "[h]ealthcare providers who receive valid assignments of the right to reimbursement from their patients have standing to sue under ERISA." *Garber v. United Healthcare Corp.,* No. 15CV1638, 2016 WL 1734089, at *3 (E.D.N.Y. May 2, 2016).   Approximately fifty-six (56) patients submitted claims pursuant to ERISA Plans that do not prohibit assignment, and an additional ten (10) patients were found to have validly executed assignments despite Defendant's challenge.   As to these approximately sixty-six (66) patients for which Plaintiff has a valid assignment, it is the type of party that may bring a claim for benefits. *See Montefiore,* 642 F.3d at 329.

  A different result is reached as to the one hundred seventy (170) patients for whom the attempted assignments have been deemed to be void, since Plaintiff cannot litigate under ERISA as to those claims.   However, where a plaintiff "lacks standing" to assert an ERISA cause of action, to also bar it from pursuing its state court causes of action on preemption grounds would be both "unjust and anomalous" and would leave it without a remedy. *McCulloch,* 857 F.3d at 148.   To avoid this result, where a purported assignment is deemed invalid under the terms of the patient's ERISA plan, the provider is not the "type of party" that may bring an ERISA claim

for payment of benefits.  *See, e.g., Travelers,* 243 F. Supp 3d at 332.  As such, the state law

causes of action are not preempted as to the claims barred by operation of anti-assignment

provisions.

      b.  *Davila* Prong One, Step Two

The next consideration is whether Sasson's causes of action are the types of claims that

can be brought under ERISA.  A claim is a colorable claim for benefits if the "essence" of the

claim directly concerns the issue of benefits under §502(a)(1)(B).  *Ciampa v. Oxford Health Ins.,*

*Inc.,* No. 15-CV-6451, 2016 WL 7392014, at *3 (E.D.N.Y. Dec. 21, 2016) (citation omitted).

A distinction has been drawn between between claims asserting a "right to payment" and

those pertaining to the proper "amount of payment." *Montefiore,* 642 F.3d at 331.  Right to

payment claims "implicate coverage and benefits established by the terms of the ERISA benefit

plan" and can be brought under §502(a)(1)(B).  *Id.* Generally, a claim falls in the right to

payment category where "the meaning of the plan language is disputed and requires the Court's

interpretation."  *Enigma Mgmt. Corp. v. Multiplan, Inc.,* 994 F. Supp. 2d 290, 298 (E.D.N.Y.

2014) (IQ); *see also Olchovy v. Michelin N. Am., Inc.,* No. 11-cv-1733, 2011 WL 4916891, at 4

(E.D.N.Y. Sept. 30, 2011) (noting that *Montefiore* "teaches that a dispute is a colorable claim for

benefits under ERISA when its resolution depends on an interpretation of the terms of an

ERISA-governed employee benefit plan; that is, when, in order to determine whether the

plaintiff is entitled to relief, the court must look to the terms of [the] employee benefit plan

itself"), *report and recommendation adopted by* 2011 WL 4916564 (E.D.N.Y. Oct. 17, 2011).

 "Amount-of-payment claims implicate the computation or execution of contract claims (i.e., the

timeliness or proper form of payments) and cannot be brought in terms of section 502(a)(1)(B)."

*Friedland v. UBS AG,* No. 16 Civ. 687, 2017 WL 6001769, at *4 (E.D.N.Y. Dec. 4, 2017) (citing *Montefiore,* 642 F.3d at 331).

The amended complaint does not allege any facts, such as misuse of a reimbursement schedule or calculation errors, suggesting an amount-of-payment issue, nor does Plaintiff make such an argument in its opposition.  Through the tort claims, Plaintiff seeks to recover in damages monies it claims it is owed for the medical services it provided    Interpretation of the relevant ERISA plans will be necessary to determine whether United appropriately made coverage decisions on the claims submitted by Sasson.  As such, the causes of action implicate the right to payment under the applicable ERISA plans.  *See generally Enigma,* 994 F. Supp. 2d at 300 ("[i]n a literal sense the parties disagree on the *amount* that [defendant] is required to pay on [plaintiff]'s claims but they only disagree because [defendant] asserts that [plaintiff] does not have the *right* to full payment under the terms of the ERISA plan." (emphasis in original)).  As the state law causes of action implicate Plaintiff's right to payment, they are the type of claims that may be brought under ERISA.

### c.  *Davila* Prong Two

The second prong of *Davila* provides that a state law claim is preempted only if "there is no other independent legal duty that is implicated by defendant's actions."  *Davila,* 542 U.S. at 210.  "The key words here are 'other' and 'independent.'"  *Montefiore,* 642 F.3d at 332.  While the "right to payment" is one basis for the action under ERISA seeking reimbursement, the question is "whether some other, completely independent duty forms *another* basis for legal action."  *Id.* (emphasis in original).  A cause of action does not raise an independent legal duty if liability "derives entirely from the particular rights and obligations established by the benefit plans."  *Davila,* 542 U.S. at 213.  Further, no independent duty is found where the plaintiff's

causes of action are "inextricably intertwined with the interpretation of Plan coverage and benefits." *Montefiore,* 642 F.3d at 332.

Plaintiff argues, without citation to case law or substantive discussion, that its state law claims of defamation and tortious interference with contract are based on freestanding duties arising in tort and implicate principles "distinct from the terms of the patients' health plans and do not require determinations that United did not properly apply the coverage terms of those plans." Pl. Opp. at 5. A plain reading of the amended complaint compels a different conclusion.

The basis for the defamation cause of action[18] is that Defendant communicated various statements to the patient/members that Plaintiff claims damaged its reputation. Plaintiff alleges that the communications from Defendant state, *inter alia,* that: it was upholding a prior determination and indicating a provision of the plan that states that an audit of a provider "may result in non-payment to the provider for these unusual or fraudulent practices," *see, e.g.,* ¶159; there was no record properly identifying the services claimed, *id.* ¶158; the claim was processed correctly and cite a plan provision entitled "Fraud and Abusive billing" which states that a patient may be billed by a provider for services "that are determined to be not payable as a result of a reasonable belief of fraud or other intentional misconduct or abusive billing," *see, e.g., id.* ¶150, and; memorialized a conversation with a patient notifying him that United had not paid the claim because "Dr. Sasson being under investigation" and that the claim was denied "per special investigations unit for fraud/abuse." *Id.* ¶153. These communications all arose out of Defendant's performance of the relevant claims procedures.

Regardless of the characterization of this cause of action by Plaintiff, it arises from the manner in which Defendant communicated its claims determinations to its members and the

---

[18]As discussed below, the tortious interference with contract cause of action is dismissed for failure to state a claim and thus does not require separate analysis. *See infra* Section III(D)(3).

content of those communications.  As a result, analysis of the cause of action will necessarily

require the court to examine the claims processes and how they were implemented by Defendant.

*See Humble Surgical Hosp. LLC v. Aetna Life Ins. Co.,* No 3:13-cv-01903, 2014 WL 12768253

at *7 (D. Conn. Sept. 30, 2014) ("[e]ven though these claims are labeled by [plaintiff] as state

law, the claims arose from the manner in which [defendant] determined not to cover [claims

submitted by plaintiff] and the subsequent notification to patients that [claims submitted by

plaintiff] would not be covered under the [plan]" (*quoting Mayeaux v. La. Health Serv. & Indem.

Co.,* 376 F.3d 420, 433 (5th Cir. 2004)).   Far from stating an independent cause of action, the

defamation claim is inextricably intertwined with interpretation of the plans.  *See Berry v. MVP

Health Plan, Inc.,* No. 1:06-CV-120, 2006 WL 4401478, at *7 (N.D.N.Y. Sept. 30, 2006)

("because plaintiffs' defamation claim requires inquiry into [defendant]'s handling of plaintiffs'

claims for benefits as assignees, it falls within the scope of ERISA's civil enforcement

provisions and is preempted").

　　　　Since the defamation cause of action is not independent, within the meaning of *Davila*

and its progeny, preemption is appropriate.  As one Circuit Court has noted,

> To allow a medical practitioner to sue for defamation . . . when an
> ERISA plan administrator decides that the plan does not cover a
> particular medical treatment for a particular participant or
> beneficiary would undoubtedly jeopardize the relationships among
> the traditional ERISA entities, of which the treating physician is
> not one.  These are the sort of claims that go to the very heart of
> the ERISA administration process.

*Mayeaux,* 376 F.3d at 432.   Allowing this defamation cause of action to proceed would only

encourage creative pleading in an attempt to thwart the intent of Congress and avoid the reach of

ERISA.  *See Humble,* 2014 WL 12768253 at *8 (noting that the heart of the complaint was a

challenge to defendant's administration of the plan and "thus the defamation claims are an

attempt to make an 'end-run' around ERISA preemption"); *Allen v. Unum Life Ins. Co.,* No. 3:15-cv-219, 2015 WL 5560072, at *3 (E.D. Va. Sept.17, 2015) (defamation claim preempted, finding that plaintiff sought "an alternative enforcement mechanism to ERISA's civil enforcement provisions, namely, a remedy for [defendant]'s fiduciary conduct during the claim review process").

## B.  Non-ERISA Plans

New York law applies to questions concerning the non-ERISA Plans.  In New York, "assignments made in contravention of a prohibition clause in a contract are void if the contract contains clear, definite and appropriate language declaring the invalidity of such assignments." *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.,* 14 F. Supp. 3d 191, 226 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).  Defendants argue that the non-ERISA Plans contain anti-assignment provisions preventing Plaintiff from pursuing any state law case of action on behalf of the patient/members.  Defendants specifically cite the applicable provision in nine (9) such plans.  *See* Defendant's Memorandum of Law in Support at 13 (citing Declaration of Mabel S. Fairley ("Fairley Decl."), DE [33], Ex. 3, Section III, p. 17; Ex. 4, Section III, p. 8; Ex. 5, Section III, p. 8; Ex. 6, Section  III, p. 8; Ex. 7, Section III, p. 8; Ex. 8, Section III, p. 16; Ex. 9, Section III, p. 52; Ex. 10, Section III, p. 51; and Ex. 13A, P. 113).

The vast majority of the claims arising under non-ERISA Plans belong to patient/members participating in the New York State Health Insurance Plan ("NYSHIP"). The Plans appearing in exhibits 3 through 10 are for NYSHIP and all contain a provision stating that the assignment of benefits to a nonparticipating provider "is not permitted."  Courts have previously found that provisions using virtually identical language to the ones at issue here were clear and unambiguous, leading to the conclusion that any attempted assignments were invalid.

*See Angstadt,* 2017 WL 10844692, at \*8; *Am. Med. Ass'n v. United Healthcare Corp.,* No. 00-cv-2800, 2001 WL 863561, at \*12 (S.D.N.Y. July 31, 2001); *Cole v. Metro. Life Ins. Co.,* 273 A.D.2d 832, 833, 708 N.Y.S.2d 789 (N.Y. App. Div. 2000).  The same conclusion is reached in this case, and the purported assignments under the NYSHIP plans are invalid.

The remaining Plan specifically cited by Defendant as containing an anti-assignment provision pertains to the Port Authority of New York and New Jersey ("Port Authority").  *See* Fairley Decl., Ex. 13A.  While the Port Authority Plan contains language requiring United's consent for assignments, the provision is ambiguous under New York law as it does not contain a clear and definite statement that assignments are void.  Additionally, Plaintiff's claims include those for patient/members of four (4) other non-ERISA Plans.  As Defendant has not cited the applicable anti-assignment provision, if any, under those Plans, they are deemed beyond the scope of this motion.

Plaintiff reasserts its argument that, by making direct payments to Plaintiff, United has intentionally waived the anti-assignment language.  Pl. Opp. at 19.  It relies on the same case law it relied upon in making the same argument as to the ERISA plan anti-assignment provisions, and the argument fails for the same reasons.  *See supra,* Section III (A)(1)(b).

Defendant urges dismissal of all the state law causes of action given the invalid assignments, while Plaintiff argues that most of those claims are "personal" to it and may be brought by it even without a valid assignment.   In the absence of a valid assignment, Plaintiff may not assert a cause of action for breach of a patient/member's contract with Defendant.  Plaintiff's Fourth cause of action is dismissed as to the claims of any patient/member belonging to the NYSHIP non-ERISA Plans; the motion to dismiss the Fourth cause of action as to the remaining claims related to non-ERISA Plans other than NYSHIP is denied.

The remaining state law causes of action are for breach of contract between Plaintiff and Defendant, unjust enrichment, quantum meruit, defamation, and tortious interference with contract. Plaintiff contends these do not involve the non-ERISA Plans, but rather arise from some independent duty that existed, or conduct that occurred, between Plaintiff and Defendant. Defendant relies solely upon *Angstadt,* in which this Court dismissed all the state law causes of action upon finding that the purported assignments were invalid. *See Angstadt*, 2017 WL 10844692, at *8. That decision, however, offers no indication of the scope of plaintiff's complaint or allegations, nor does it include any discussion or analysis of the individual state law causes of action beyond the conclusion that the state law causes of action "involving" the non-ERISA plan were dismissed. Based on the allegations in the amended complaint in the instant case, the "personal" claims asserted by patient/members in non-ERISA Plans are not dismissed by operation of an anti-assignment clause.

## C.  State Law Claims—Contract and Quasi Contract

### 1. Breach of Contract (Third C/A)

Plaintiff's Third cause of action seeks to recover based on Defendant's alleged breach of a contract between it and Plaintiff. Plaintiff does not contend that it has a written contract with Defendant, but rather that these parties "through their prior customary practices and business dealings have agreed that when Plaintiff provides emergency health care services to patients insured under a policy issued, funded or administered by Defendant th[e]n Defendant will pay Plaintiff the amount of benefits the patient is entitled to receive under its insurance plan with Defendant with respect to those health care services." AC ¶37. "[U]nder New York law, '[a] contract cannot be implied in fact where there is an express contract covering the same subject matter involved.'" *Saeed v. Kreutz*, 606 F. App'x 595, 597 (2d Cir. 2015) (quoting *Julien J.*

28

*Studley, Inc. v. N.Y. News, Inc.,* 70 N.Y.2d 628, 512 N.E.2d 300, 518 N.Y.S.2d 779 (1987)

(alteration in original)).   The amended complaint makes it clear that Plaintiff's theory of

recovery is based upon another express agreement -- the non-ERISA plan agreements between

the patient/members and United.

Even assuming *arguendo* that the purported agreement between Sasson and United did

not cover the same subject matter as the non-ERISA plans, the amended complaint fails to state a

cause of action. Under New York law, "[a] contract implied in fact may result as an inference

from the facts and circumstances of the case, although not formally stated in words, and is

derived from the 'presumed' intention of the parties as indicated by their conduct.  It is just as

binding as an express contract arising from declared intention, since in the law there is no

distinction between agreements made by words and those made by conduct." *Jemzura v.

Jemzura,* 36 N.Y.2d 496, 503-04, 330 N.E.2d 414, 369 N.Y.S.2d 400 (1975) (internal citations

omitted)**.**  An implied contract "requires proof of the same elements to establish an express

contract—mutuality of intent, offer and acceptance, lack of ambiguity, and consideration."

*Patsy's Italian Rest., Inc. v. Banas,* 508 F. Supp. 2d 194, 218 (E.D.N.Y. 2007).  The elements

"can be inferred from the specific conduct of the parties, industry custom, and course of

dealing." *Id.* (internal quotation marks and citation omitted); *see also Fasolino Foods Co. v.

Banca Nazionale del Lavoro,* 761 F. Supp. 1010, 1021 (S.D.N.Y. 1991) (noting that a "prior

course of dealings between the parties is a tool for interpreting existing contracts and may not be

used to establish contract formation"), *aff'd,* 961 F.2d 1052 (2d Cir. 1992).   The amended

complaint contains no factual allegations that adequately plead a cause of action for implied

contract.

There are no factual allegations whatsoever supporting the existence of any "customary practices and business dealings," between Sasson and United prior to the submission of the disputed claims forming the basis of <u>this</u> case.  The amended complaint summarily speaks only to how Plaintiff "typically" accepts assignments, renders services, and submits claims forms. *See* AC ¶¶ 3-5.  The "business dealings" that are the subject of this litigation cannot simultaneously create customary practices that would support an inference that these parties had entered into an implied contract.  Further, the amended complaint does not include any allegations that plausibly establish the existence of the elements necessary for formation of a contract.  For example, there is no allegation that there was any meeting of the minds between the parties or that Defendant received anything of value that would constitute consideration.

### 2. Quasi-Contract (Sixth & Seventh C/A)

Plaintiffs also assert claims for unjust enrichment and quantum meruit. Although the amended complaint alleges them as two discrete claims, "[q]uantum meruit and unjust enrichment are not separate causes of action and are therefore analyzed under the same principles."  *Assoc. Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC,* 159 F. Supp. 3d 324, 337 (E.D.N.Y. 2016) (internal quotation marks and citation omitted); *see also Beth Israel Med. Ctr.*, 448 F.3d at 586 (the elements of an unjust enrichment claim in New York are "(1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."); *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,* 418 F.3d 168, 175 (2d Cir. 2005) (to recover for quantum meruit, a plaintiff must establish: "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefore, and (4) the reasonable value of

the services").  Claims for unjust enrichment and quantum meruit may be analyzed together "as a single quasi contract claim." *Mid-Hudson,* 418 F.3d at 175.

In cases such as that currently before the Court, where the services were not provided at the behest of the plaintiff but rather by the patient, dismissal of the quasi-contract causes of action against the insurer defendant is appropriate.  *See Josephson v. United Healthcare Corp.,* No. 11-CV-3665, 2012 WL 4511365, at *5 (E.D.N.Y. Sept. 28, 2012) (unjust enrichment claim "fails to state a basis for recovery because Plaintiffs' services were performed at the behest of his patients, not United"); *Pekler v. Health Ins. Plan of Greater N.Y.,* 67 A.D.3d 758, 760, 888 N.Y.S.2d 196, 198 (App. Div. 2009) (as the "medical services were performed by the plaintiff doctors at the behest of their patients, no claim in quantum meruit can be asserted against the defendants"); *Kirell v. Vytra Health Plans Long Island, Inc*., 29 A.D.3d 638, 639, 815 N.Y.S.2d 185, 187 (App. Div. 2006) (as the non-participating provider performed his services at the behest of the patients, "no claim in quantum meruit can be asserted against the defendants").  Plaintiff does not contest the validity of this rule generally, but argues that a different result is merited where, as here, emergency healthcare services were provided.  Plaintiff's primary support for this proposition is a New York trial court case.  *See N.Y. City Health & Hosp. Corp. v. WellCare of N.Y., Inc.,* 35 Misc.3d 250, 937 N.Y.S.2d 540 (Sup. Ct. New York County, 2011).  That case is distinguishable on its facts.

The defendant insurer in *WellCare* was a Medicare Advantage ("MA") organization that had contracted with the Federal Centers for Medicare & Medicaid Services to provide services to Medicare enrollees.  The decision was premised upon application of specific federal laws and regulations covering the provision of medical services to Medicare enrollees, and rested upon the statutory requirement that the plaintiff hospital provide emergency services to those enrollees.

31

*WellCare,* 35 Misc.3d at 252 ("Medicare provider hospitals…are compelled to provide treatment and stabilization for any patients who arrive at their emergency rooms"). Under that circumstance, the court found that where "a hospital is required by law to treat patients in an emergency room, an insurance company is unjustly enriched if it fails to pay the hospital in full for the costs incurred in rendering the necessary treatment to the insurer's enrollees." *Id.* at 257. The three cases upon which *WellCare* relied, cited by Plaintiff here as well, all dealt with hospitals suing managed care companies to recover for services rendered to Medicaid recipients. *See El Paso Healthcare Sys., LTD v. Molina Healthcare of N.M., Inc.,* 683 F. Supp. 2d 454, 456 (W.D. Tex. 2010); *Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alts., Inc.,* 832 A.2d 501 (Pa. Super. Ct. 2003); *River Park Hosp. Inc. v. BlueCross BlueShield of Tenn., Inc.,* 173 S.W.3d 43 (Tenn. Ct. App. 2002).

Here, the amended complaint claims only that Plaintiff "provides medical care to [its] patients after responding to hospital calls to attend to patients needing emergency care" and that it "is obligated to provide such emergency medical care to the patients without regard to their financial situation and whether or not they have healthcare insurance." AC ¶4. Even assuming that the holding of *WellCare* applies to individual providers as well as hospitals, Plaintiff does not claim that its performance of services was compelled by Medicare, Medicaid, or any law, and thus the theory of recovery enunciated in *WellCare* is unavailable to it.

**D.  State Law Claims—Tort**

<u>1. Tolling Agreement and Statute of Limitations</u>

The issue of the running of the applicable statute of limitations has been raised by Defendant as to Plaintiff's tort claims.  Plaintiff argues that the tolling agreement of May 4, 2016 serves to extend the statute of limitations of those claims.

As a threshold matter, there is a question as to whether Plaintiff can claim any benefit from the tolling agreement since it does not appear to be a party to it.   The agreement is between United Healthcare Insurance Company and Dr. Homayoun Sasson, *not* Plaintiff Sasson Plastic Surgery LLC, and agrees to toll the statute of limitations as to "Dr. Sasson's claims against [United] ..."   There is nothing on the face of the document indicating that Dr. Sasson signed it in his representative rather than individual capacity; indeed, the Plaintiff LLC is not mentioned at all.   Neither party has addressed whether the tolling agreement is binding on Plaintiff.   As the parties have not weighed in on this issue, the Court will assume, for the purposes of this motion, that any benefit from the tolling agreement may be asserted by Plaintiff.

Defendant argues that the tolling agreement is unenforceable under New York law because the tolling was for an indefinite term.   Although Defendant's argument may have had merit if it had been directed to a contract cause of action, it fails when applied to the causes of action sounding in tort.

New York General Obligations Law governs a "promise to waive, to extend, or not to plead the statute of limitation applicable to an action arising out of a contract express or implied in fact or in law...."   N.Y. GEN. OBLIG. LAW ("GOL") §17-103(1).   The New York Court of Appeals determined that given the intent behind GOL §17-301 that extensions not be indefinite, "as well as the public policy concerns related to the Statute of Limitations and agreements to extend it," an agreement that does not specify the length of the extension cannot be performed "according to its terms" and is therefore void and unenforceable.   *Bayridge Air Rights, Inc. v. Blitman Constr. Corp.,* 80 N.Y.2d 777, 780, 599 N.E.2d 673, 587 N.Y.S.2d 269 (1992).   Cases deciding whether to invalidate a tolling agreement look to whether the claims arise out of contracts, express or implied, as designated in GOL§ 17-103(1).   *See T&N PLC v. Fred S. James*

33

& Co., 29 F.3d 57, (2d Cir. 1994) (in light of GOL §17-103(1) and the *Bayridge* decision, standstill agreement invalid and unenforceable to extend statute of limitations for contract claim); *City of N.Y. v. Black & Veatch*, No. 95 Civ. 1299, 1997 WL 624985, at *14 (S.D.N.Y. Oct. 6, 1997) (acknowledging New York Court of Appeals' strict interpretation of GOL §17-103(1) and finding standstill agreement ineffective to preserve contract claims).  Where the claims do not fall within those proscribed in GOL §17-103(1), tolling agreements are not invalidated.  *See, e.g., In re Stantec Consulting Grp.*, 36 A.D.3d 1051,  827 N.Y.S.2d 762 (N.Y. App. Div. Dep't 2007) (tolling agreement of indefinite term effectively tolled applicable statute of limitations for professional malpractice); *WYS Design P'ship Architects, P.C. v. Bd. of Managers of 285 Lafayette St. Condo.*, 29 Misc. 3d 120(A), 958 N.Y.S.2d 311, 2010 WL 3769212, at *3 (Sup. Ct., NY County, Sept. 16, 2010) (tolling agreement not void or unenforceable where complaint alleged professional malpractice).  Thus, the tolling agreement is not unenforceable as to the tort causes of action.

    2.  <u>Defamation (Tenth C/A)</u>

The amended complaint contains allegations that Defendant defamed Sasson in communications sent to fifty-two (52) of the John Doe patient/members.  AC ¶¶ 111-160. Defendant maintains that this cause of action should be dismissed because (a) it is time-barred; (b) the statements are protected by a qualified privilege; and (c) the amended complaint lacks the requisite specificity to state a claim.

Under New York law, defamation claims are subject to a one-year statute of limitations. *See* N.Y. C.P.L.R. §215(3).  The claim accrues on the date the allegedly defamatory statement was first published.  *See Nussenzweig v. diCorcia,* 9 N.Y.3d 184, 188, 878 N.E.2d 589, 848 N.Y.S.2d 7 (2007) (New York employs a "single publication rule" under which a claim for

defamation "accrues on the date the offending material is first published").  The original complaint was filed on February 24, 2017, and the dates of the alleged acts forming the basis of the defamation claim range from July 29, 2013 to September 14, 2016.  *See* AC ¶¶ 111-160. Without the benefit of the tolling agreement, the only timely claims relate to communications between United and John Doe 50, 51, and 52.  *Id.*  ¶¶ 158-160.  Assuming again, for the purposes of this motion, that the tolling agreement covers Plaintiff, twelve (12) additional claims are timely.  The tolling agreement expressly provides that claims "shall be tolled as of the date of this agreement," with the result that claims accruing from May 4, 2015 until execution of the agreement are timely.  *See id.* ¶¶ 146-157.   To the extent the statute of limitations on a particular claim had already run by May 4, 2016, the agreement will not save that claim.[19]  As the conduct referred to in AC  ¶¶111-145 all occurred more than one-year prior to execution of the tolling agreement, any claim based thereon is time barred.

To prove a claim for defamation in New York, plaintiff must show: "(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm." *Tannerite Sports, LLC v. NBCUniversal News Grp.,* 864 F.3d 236, 245 (2d Cir. 2017) (internal quotation marks and citation omitted).  Defendant claims that the communications to its patient/members were made during its investigation of potential insurance fraud and thus are protected by a qualified privilege.  *See, e.g., Tractman v. Empire Blue Cross & Blue Shield,* 251 A.D.2d 322, 322-23, 673 N.Y.S.2d 726 (N.Y. App. Div. 1998) (where insurer communicated

---

[19] Plaintiff's suggestion that the earlier, untimely defamatory statements are "resurrected" by repeated re-publication is unavailing.  The allegedly defamatory statements by Defendant to different patient/members are unique to Plaintiff's experience with that individual.  The cases cited by Plaintiff do not support the conclusion that use of the same language but applied to unique circumstances is a "re-publication" of the same defamatory statement.

with patients to procure information as part of a "random routine anti-fraud review," communications were protected by a qualified privilege).  This qualified privilege, also called a "common interest" privilege, is available where the statements are made by one person to another upon a subject in which they both have an interest. *See Liberman v. Gelstein,* 80 N.Y.2d 429, 437, 605 N.E.2d 344, 590 N.Y.S.2d 857 (1992).

Plaintiff does not argue that the qualified privilege does not apply, but rather suggests that any privilege is "dissolved if plaintiff can demonstrate that defendant spoke with malice." *Kamchi v. Weissman,* 125 A.D.3d, 142, 158, 1 N.Y.S.3d 169 (N.Y. App. Div. 2014) (quoting *Liberman,* 80 N.Y.2d at 437).   Malice may be found where there are plausible allegations of spite or ill will, or that the speaker was "highly aware that [the statement] is probably false." *Liberman*, 80 N.Y.2d at 438-39.  Conclusory allegations of malice will not overcome the qualified privilege.  *See Trachtman,* 251 A.D.2d at 323.

The amended complaint contains no factual allegations from which malice could be inferred.  Plaintiff points to its unsupported allegation that any investigation by Defendant into fraud by Plaintiff "is a sham to support Defendant's improper efforts to avoid paying Plaintiff." AC ¶164.  This conclusory allegation does not overcome the privilege.[20]

United also submits that the factual allegations in the amended complaint are inadequate to state a cause of action because it fails to provide the identity of the individual(s) at United who "made" the allegedly defamatory statements.  The statements were made in letters from Defendant to the patient/members, and the amended complaint identifies the date of each such communication.  Under these circumstances, this information is sufficient to provide Defendant with adequate notice of Plaintiff's claim.

---

[20] Plaintiff's request to further amend the complaint to add allegations of malice is addressed below.  *See* Section III(F).

Plaintiff's claims for defamation are limited to the fifteen (15) timely instances set forth in the amended complaint. AC ¶¶ 146-160. While these allegations concern communications made to John Does 38 to 52, inclusive, there is no indication whether these individuals' claims were submitted pursuant to ERISA or non-ERISA Plans. As discussed above, *see* Section III(A)(3), to the extent any of these John Doe patient/members participated in ERISA plans and executed valid assignments, Plaintiff's defamation claim is preempted. Thus, of the fifteen (15) timely claims, only those claims, if any, in which the John Doe patient/member participated in a non-ERISA Plan, or an ERISA Plan where there was no valid assignment, may proceed.

3. Tortious interference with contract (Eleventh C/A)

To sustain a claim for tortious interference with contract, a plaintiff must establish "[1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126–27 (2d Cir. 2019) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (1996)). Plaintiff argues that it had "contracts" with its patients by virtue of having provided services to them, that Defendant had knowledge of those contracts, and that Defendant communicated with various patient/members and advised them not to pay the balance owed to Plaintiff, thus interfering with Plaintiff's contractual relationship with those individuals. Applying New York law, the claim is dismissed as duplicative of the defamation claim.

"New York law considers claims sounding in tort to be defamation claims. . . where those causes of action seek damages only for injury to reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his reputation." *Hengjun Chao v. Mt. Sinai*

*Hosp.,* 476 F. App'x 892, 895 (2d Cir. 2012) (internal quotation and citation omitted; alteration in original); *see also Jain v. Sec. Indus. & Fin. Markets Ass'n,* No. x, 2009 WL 3166684, at *9 (S.D.N.Y. Sept. 28, 2009) ("Unlike most torts, under New York law defamation is defined in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished" (internal quotation marks and citation omitted)).  To successfully assert both a cause of action for defamation and tortious interference, a plaintiff must allege "an independent source of the alleged harm."  *Glob. Supplies NY, Inc. v. Electrolux Home Prods., Inc.,* No. 19-CV-4823, 2021 WL 1108636, at *3 (E.D.N.Y. Mar. 23, 2021).  Absent an independent source of harm, the tortious interference cause of action is dismissed as duplicative "because any economic damages derive from defamatory statements."  *Goldman v. Barrett,* 733 F. App'x 568, 571 (2d Cir. 2018) (summary order).

Plaintiff's cause of action for tortious interference with contract begins by expressly incorporating paragraphs from its defamation cause of action.  *See* AC ¶174.  The additional allegations state that Defendant told several patient/members that there were no records supporting the services claimed and that "the patient should not be responsible for payment to a doctor for undocumented work."  *See id.* ¶¶180-186, 188.  Plaintiff alleges that it provided the necessary documentation, and that "Defendant's assertion to the contrary is false and merely a pretense to unjustifiably advise patients to not pay Plaintiff's charges or balance bills."  *Id.* ¶190. It concludes by conceding that "Defendant's interference is part of its overall scheme to vex, impair, and damage Plaintiff as also evidenced in the various defamation claims above."  *Id.* ¶191.  Both tort causes of action seek damages in the amount of the Balance Due from the patients.  *See id.* ¶¶173, 193.  The damage suffered by Plaintiff derives from the allegedly

defamatory statements made by Defendant and flows from an attack on Plaintiff's reputation. The tortious interference claim is properly dismissed as duplicative of the defamation claim.

Even assuming *arguendo* that the tortious interference cause of action is not duplicative, the amended complaint fails to state a cause of action.  For example, it utterly fails to plead the requisite intent on the part of Defendant.  Additionally, Plaintiff does not provide any factual support for its generalized suggestion that Plaintiff was actually damaged by non-payment of balance bills by any of its patients.  Dismissal is appropriate where a complaint fails to plead an actual breach of contract.  *See ADYB Engineered for Life, Inc., v. Edan Admin. Servs. Ltd.,* No. 1:19-CV-7800, 2021 WL 1177532 (S.D.N.Y. Mar. 29, 2021) ("The New York Court of Appeals and the Second Circuit . . . have consistently emphasized the necessity of an *actual breach* by the third party" (emphasis in original)).  The conclusory allegation that "[n]umerous patients" have not paid their bills, and the curious statement that, "[u]pon information and belief, the nonpayment is a proximate cause of Defendant's unjustifiable interference,"  AC ¶192, do not satisfy Plaintiff's pleading burden.  Considering these pleading deficiencies, dismissal is appropriate.

**E.  Limitation on Actions**

Defendant urges that if the amended complaint is not dismissed in its entirety, any remaining claim must be dismissed if it was "untimely" under any applicable limitations on action provisions contained in the ERISA and non-ERISA plans.  It contends that over two hundred (200) of the ERISA claims are brought under ERISA plans containing such provisions. The Court declines to address the limitations of actions argument at this point.

Similar to the anti-assignment provisions discussed above, the limitation of actions provisions are not uniform for every plan.  For example, the limitations periods set forth different

accrual events and/or time periods, *see, e.g.,* Def. App'x B, #78:D.J. (within three years from the date the claim was required to be filed); *id.* #53:J.G. (within one year after decision on appeal), or require completion of the appeals process. *See, e.g., id.* #71:A.H. Factual development of the record is necessary prior to determination of whether any particular claim may be barred as untimely by operation of a contractual provision. Defendant's motion to dismiss on this basis is denied.

## F. Leave to Amend

Although leave to amend a complaint "should be freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), whether to grant or deny leave to amend lies in the sound discretion of the court. *See McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007). Where a plaintiff does not request leave to amend, the court may *sua sponte* decline to give leave to amend. *See Bright-Asante v. Wagner,* No. 15-CV-9110, 2017 WL 6948359, at *10 (S.D.N.Y. Dec. 1, 2017). As the Second Circuit has held, "[w]hile leave to amend under the Federal Rules of Civil Procedure is 'freely granted,' . . . no court can be said to have erred in failing to grant a request that was not made." *Cruz v. FXDirectDealer, LLC,* 720 F.3d 115, 126 (2d Cir. 2013) (quoting *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011)); *see also Malgieri v. Ehrenberg,* No. 12-CV-2517, 2012 WL 6647515, at *9 (S.D.N.Y. Dec. 21, 2012). ("a district court has no obligation to grant leave to amend *sua sponte*"). Plaintiff has not formally moved to further amend, nor has it submitted a proposed second amended complaint. In its opposition papers, it has summarily requested leave to amend to address discrete issues, and also included a *pro forma,* two-sentence request for leave to amend if Defendant's motion is granted to any extent. *See* Pl. Opp. at 25 (citations omitted).

Plaintiff requests leave to amend at four (4) separate points in its opposition brief:  (1) regarding application of the anti-assignment provisions, "to plead United's waiver, including facts supporting an inference of such waiver," Pl. Opp. at 16 n.7; (2) for the ERISA breach of fiduciary duty cause of action, "to replead to seek 'appropriate equitable relief,'" *id.* at 18 n.9; (3) regarding the defamation cause of action, "to amend its knowingly false allegations" to buttress the allegation that United conducted a sham investigation, *id.* at 10 n.4; and (4) in general, "[i]f the Court grants United's motion in whole or in part, then Plaintiff requests permission to amend its pleadings …under Rule 15 of the Federal Rules of Civil Procedure."  *Id.* at 25.

With one exception, Plaintiff has failed to offer additional facts at all, let alone any that would cure the deficiencies in the amended complaint.  Given its failure to provide any details of a proposed amendment, denial of leave to amend is appropriate here.  *See e.g., Brown v. Cerberus Cap. Mgmt.,* 703 F. App'x 11, 15 (2d Cir. 2017) (noting plaintiff's failure to identify "any way in which a further amendment of its factual allegations would cure the amended complaint's shortcomings"); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,* 752 F.3d 173, 188 (2d Cir. 2014) (denial of leave to amend warranted where "plaintiffs have identified no additional facts or legal theories—either on appeal or to the District Court—they might assert if given leave to amend"); *Chudnovsky v. Leviton Mfg. Co.,* 158 F. App'x 312, 314 (2d Cir. 2005)  (affirming denial of leave to amend where plaintiff "did not indicate that he could allege additional facts that would cure the deficiencies in his already-amended complaint"); *In re Goldman Sachs Mortgage Serv'g S'holder Derivative Litig.,* 11-civ-4544, 2012 WL 3293506, at *11 (S.D.N.Y. 2012) (denying leave to amend where plaintiffs failed to articulate how an amendment would cure pleading defects).

Moreover, Sasson has failed to submit a proposed second amended complaint including any proposed factual enhancements. *Ackermann v. N.Y. City Dep't of Info. Tech. & Telecommc'ns,* No. 09-CV-2436, 2010 WL 1172625 at *1 (E.D.N.Y. Mar. 24, 2010) ("Any motion to amend must attach the proposed amended complaint specifying the new claims."). This failure provides an additional basis to deny it leave to amend. *See Schwasnick v. Fields,* No. 08-civ-4759, 2010 WL 2679935, at *11 (E.D.N.Y. June 30, 2010) (the court may "deny leave to amend where the Plaintiff[] fails to submit a proposed pleading and does not explain why"); *LaBarbera v. Ferran Enters., Inc.* No. 05-civ-2678, 2009 WL 367611, at *3 (E.D.N.Y. Feb. 10, 2009) ("Denial of the motion to amend is also warranted by Plaintiffs' unexplained failure to submit a proposed pleading").

The lone exception where Plaintiff has provided some basis for amendment is its request for leave to amend its defamation claim to include facts supporting an inference that United acted with malice sufficient to defeat the qualified privilege. On this issue, Plaintiff provides some factual information that it would include in its second amended complaint. For example, it stated that United at some point started to include statements regarding Sasson's purported fraud in its denial letters in retaliation for Sasson having filed a complaint against United with the New York Department of Finance. Pl. Opp. at 10 n.5. Although the statements contained in Sasson's brief are too broad and unsupported on their own to adequately plead malice, they raise a theory that, with the inclusion of additional factual allegations, could nudge Plaintiff's claim from the implausible to plausible on this issue. Accordingly, leave to amend to this extent is granted; however, this permission is conditional upon there being any defamation claim remaining in the case upon application of the Court's ruling regarding ERISA claims and preemption of the defamation cause of action. In other words, if all the fifteen (15) timely claims implicate

communications with patient/members who had ERISA Plans with valid assignments, then the defamation cause of action is entirely preempted and further amendment would be futile. If there is at least one timely defamation claim that has not been preempted or arises from a non-ERISA Plan, and if Plaintiff wishes to file a second amended complaint, it shall do so by **April 26, 2021.**

## G.  Remaining Claim & Amended Claims List

The following causes of action remain:  (1) First C/A for payment of ERISA benefits as to approximately sixty-six (66) patients; and (2) Fourth C/A for breach of patient/member contracts with Defendant as to claims arising under non-ERISA Plans except NYSHIP.  If Plaintiff chooses to file a second amended complaint to provide factual enhancements discussed above, a defamation cause of action for up to fifteen (15) patient/members may exist.

After Plaintiff has filed its second amended complaint, or indicated it will not do so, it is directed to create an Amended Claims List.  It should confer with Defendant and prepare a spreadsheet in Excel, one row per patient, consisting of columns containing the following data: Patient Name; Date(s) of Service; Plan Name; Plan Type (ERISA or non-ERISA); Amount Billed; Amount Paid; Amount Owed; and the remaining cause(s) of action as to that patient.[21] The spreadsheet shall be sorted first by Plan Type, then alphabetically by patient last name. After sorting is completed, each row will be numbered sequentially.  Upon completion, Plaintiff shall, **no later than May 10, 2021,** (1) file a copy, with patient names redacted, on ECF; and (2) provide an unredacted copy to Chambers.  Going forward, this Amended Claims List will be used by the Court and the parties to differentiate individual claims in this matter.

---

[21]To save space, the parties need not use the exact heading titles suggested here and may also create a key to designate the remaining claims under the First, Fourth, and Tenth causes of action.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, DE [31], is granted in part and denied in part as follows:

- As to Plaintiff's First cause of action, granted as to claims with invalid assignments and denied as to the remaining claims under ERISA Plans;

- Granted as to Plaintiff's Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh causes of action, which are dismissed with prejudice;

- As to Plaintiff's Fourth cause of action, granted as to any claim for a patient/member covered by a NYSHIP Plan and denied as to claims under other non-ERISA Plans; and

- Granted as to the Tenth cause of action for defamation with leave to replead limited to any claim(s) that (1) was timely filed, and (2) pertains to communications with a patient/member with (a) a non-ERISA plan, or (b) an ERISA plan for which there was an invalid assignment.

The telephone status conference scheduled for April 28, 2021 is adjourned to **May 20, 2021 at 10:00 a.m.**  The parties should be prepared to discuss settlement of the remaining claims at that conference.

**SO ORDERED**.

/s/ *Sandra J. Feuerstein*

Sandra J. Feuerstein
United States District Judge

Dated: Central Islip, New York
March 31, 2021